39803. MOONEYHAM v. THE STATE.

GREGORY, Justice.

Ronnie Deyton Mooneyham was tried, along with James Harold Rogers, for the murder of Douglas McArthur Archer. Mooneyham was convicted of murder and sentenced to life imprisonment. Rogers, whose appeal is before this court,[1] was found guilty of voluntary manslaughter and sentenced to twenty years imprisonment. Robert David Hall, also indicted for the murder of Archer, was granted immunity from prosecution in return for his testimony on behalf of the State.

Dr. John Sparti, the Paulding County medical examiner, testified that the victim died from a single bullet wound to the abdomen. Dr. Sparti gave his opinion that the victim bled to death "anywhere from two to ten minutes" after being shot. He further testified that it was "possible" the victim was conscious and ambulatory during this interval.

The undisputed evidence shows that co-indictee Robert Hall was indebted to the victim for over $3,000.[2] Hall testified at trial that on numerous occasions the victim had threatened "to blow [Hall's] brains out" if he did not promptly repay the money. To forestall the victim, Hall had given him a boat which Hall desired to recover.

At approximately 7:30 p. m. on April 17, Hall, Rogers, their wives, Mooneyham and Hall's mother, whom Mooneyham dated,

---

[1] See, *Rogers v. State,* 251 Ga. 408 (1983), post.

[2] Hall testified that prior to the murder he sold drugs for the victim, but began to personally consume more of the drugs than he sold. Within a few months he had accumulated $3,000 in debts to the victim.

drove to a local nightclub where they danced and drank beer. They returned to Mrs. Hall's home at approximately 3:00 a.m. and consumed a "small amount" of beer. Hall testified that he was troubled by the victim's threats on his life and asked Rogers, who knew the victim, to intervene in the situation on Hall's behalf. Rogers promptly telephoned the victim and arranged for an immediate meeting. Rogers, Mooneyham and Hall then proceeded to the victim's house, stopping by Rogers' mobile home along the way to pick up "at least a six-pack" of beer. Hall was armed with a .22 pistol he had removed from his car before leaving his mother's house. Rogers concedes he was armed with a loaded .38 handgun. At this point the trial testimony of each of the three men diverges.

Rogers, who drove the men to the victim's home, testified he was not sure where the victim lived and had to get directions from Hall. Hall and Mooneyham testified that, enroute to the victim's home, Rogers removed a handgun from the dash of his car and gave it to Mooneyham; Mooneyham placed the gun in his trousers. At trial, Rogers denied giving a gun to Mooneyham at any point during the evening. Hall testified that he told the other two men, "if they woke [the victim] up, that man is crazy. He'd shoot somebody." Upon arriving at the victim's house, Rogers and Mooneyham went inside, instructing Hall to remain in Rogers' car.

Both Rogers and Mooneyham testified the victim demanded that Rogers hand over any weapons. Rogers complied, giving the victim his .38 handgun which the victim emptied of shells and returned to Rogers. A similar request was not made of Mooneyham.

Rogers and the victim began discussing ways in which Hall might reduce and settle his debt to the victim. When Mooneyham attempted to intervene in the discussion, the victim ordered him to "sit down and shut up." The victim then summoned his brother-in-law to watch Mooneyham while he and Rogers proceeded to another area of the house. Both Rogers and Mooneyham testified that the victim instructed his brother-in-law "to blow [Mooneyham's] brains out if [he] moved." According to Rogers' testimony he was unable to persuade the victim to reduce the amount of Hall's debt. Both defendants testified that the victim escorted Rogers and Mooneyham outside, picking up a shotgun as he exited. Once outside the victim began shouting at Hall that he would kill Hall's mother if she "turned state's evidence against [him] on these drugs." Mooneyham testified that the victim struck Hall in the mouth with the butt of the shotgun he was holding.[3] It is not disputed that

---

[3] Hall testified he believes the victim struck him in the mouth with either a gun or small baseball bat because he later found splinters in his lip.

Hall then hit the victim in the stomach, causing the victim to "drop whatever he had in his arms." Hall and the victim then engaged in a fistfight lasting a few minutes.

Hall testified that the victim knocked him to the ground, then began running toward Rogers and Mooneyham. Hall stated that when the victim was two feet from the men, Mooneyham removed the gun from his trousers and leveled it at the victim. The victim shouted "don't shoot," and "the gun went off." The victim cried, "they got me." Hall testified that the victim was bare-chested but he did not see any blood. However, the victim "sort of held his chest" and crouched down. As Hall approached the victim to determine whether he was injured, the victim hit him in the jaw; the two grappled again but Hall testified the victim's "punches weren't as hard" as they had previously been. Hall testified that during this fight an unidentified person emerged from the victim's house and shot at Hall. Hall stated he observed Rogers take the gun from Mooneyham and fire at the victim. The victim ran toward his house, but fell in the yard. Hall testified that he, Mooneyham and Rogers climbed into Rogers' car and drove away.

Mooneyham's version of these events is substantially different from Hall's. Mooneyham testified that while Hall and the victim were fighting, he observed a person who he believed to be the victim's brother-in-law emerge from the house and aim a gun at Hall. The victim shouted to this person to "shoot [them]." Mooneyham stated that he fired a shot "down toward the ground" in the direction of this person. According to Mooneyham, Rogers then took the gun away from him and fired several shots at the victim. Mooneyham stated that while he could not be sure it was the victim's brother-in-law he shot at, he was certain he had not taken a shot at the victim.

Rogers' version of these events is different still. He testified that while Hall and the victim were fighting, he heard someone say "shoot [them]" and a shot from an undetermined location was fired. He then observed Mooneyham walk toward the victim and fire a gun four times. Rogers testified that he ran to Mooneyham and hit Mooneyham's arm in an effort to stop him, but Mooneyham "squeezed off two more rounds" in the victim's direction. Rogers stated that as the three men drove away, Mooneyham stated, "the debt is paid in full."

Lisa Archer, the victim's widow, verified that portion of the defendants' testimony concerning their dealings with the victim over Hall's debt. She denied, however, that the victim had a weapon when he went outside with Rogers and Mooneyham. Mrs. Archer testified

that when she heard a gun go off, her brother ran out of the house into the yard, armed with a .38 handgun. She heard another gun go off and her brother, now wounded, returned to the house. Mrs. Archer stated that she heard "three or four" more shots, then heard her husband cry, "Oh God, they shot me." The victim then came "running into the house and stated, 'Harold shot me.' " The victim died shortly thereafter.

A .357 Magnum, determined by ballistics experts to have been the murder weapon was found weeks after the murder, abandoned on a roadside in Paulding County.[4] Neither Mooneyham nor Hall was able to positively identify this weapon as the one they alleged Rogers had handed Mooneyham before the confrontation with the victim. Rogers stated unequivocally that he had never seen this gun until trial. A microanalyst from the State Crime Lab testified that, based on an analysis of fibers found on the murder weapon, it was his opinion that these fibers "could have originated" from a gun holster found in the glove compartment of Rogers' car.

(1) Mooneyham first argues that the evidence is not sufficient to support the verdict. While there is great conflict in the evidence, there is evidence sufficient to authorize a rational trier of fact to find Mooneyham guilty of murder beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

(2) Mooneyham suggests that the trial court erred in refusing to let him re-open the evidence to offer the testimony of Frances Hall to rebut certain testimony made by her son, co-indictee Robert Hall.

After both defendants had rested, but prior to closing arguments, counsel for Mooneyham approached the trial court and stated that, during the luncheon hour, Frances Hall had approached him with some information which was "newly discovered." According to defense counsel this information concerned statements Robert Hall had made to his mother which clarified Rogers' purpose in stopping by his mobile home before proceeding to the victim's residence. The district attorney stated he had no objection to reopening the evidence. However, counsel for Rogers objected on the grounds that Frances Hall had been subpoenaed by the State and had attended the trial each day except the day Rogers had attempted to

---

[4] The day following the victim's death, Rogers led law enforcement officers to a dumpster where he had thrown the .38 pistol the victim had forced him to empty. Ballistics experts determined that this was not the murder weapon. Hall's .22 pistol was recovered by law enforcement officers in the victim's driveway on April 18. Ballistics experts concluded that the fatal shot was not fired from this weapon.

call her as a witness. Rogers also pointed out that Mooneyham had testified he was living with Frances Hall while out on bond, and, therefore, any information Mrs. Hall had could not be considered "newly discovered" as to Mooneyham. The trial court thereafter denied Mooneyham's motion to reopen.

We have held that the trial court has a sound discretion to determine whether the evidence in a case may be reopened. *State v. Roberts,* 247 Ga. 456 (277 SE2d 644) (1981). Under the circumstances presented here, we cannot say that the trial court abused that discretion. We note that no record of what Frances Hall would have testified to was made. We are, therefore, unable to ascertain that Mooneyham was harmed by the exclusion of her testimony.

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 8, 1983.

*Donald R. Donovan,* for appellant.

*William A. Foster III, District Attorney, Michael J. Bowers, Attorney General, Virginia H. Jeffries, Assistant Attorney General,* for appellee.